IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| D'ARCY PETROLEUM, LLC; LORD FISHER PETROLEUM, LLC; and BRANDON ROLNICK, § § § § | | |
| Plaintiffs, § | | |
| v. § | Case No. 3:19-cv-02770-M-BT | |
| JOHN MINK; KNIK ENERGY, INC.; KELLY BUSTER; STRAWN PARTNERS, LLC; STRAWN OPERATING CO., LLC; HOLLAND ASSET PARTNERS, LLC; UNION ASSET MANAGEMENT, LLC; and STRAWN PARTNERS OPERATING, LLC, § § § § § § § § | | |
| Defendants, § | | |
| v. § | | |
| SHANE BENNETT, and ARGUS DRILLING, LLC, § § | | |
| Third-Party Defendants. § | | |

**ORDER GRANTING DEFAULT JUDGMENT**

Third-Party Plaintiffs Kelly Buster and Union Asset Management, LLC (Union) filed a Motion for Default Judgment (ECF No. 48) in this civil action arising under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq*. For the following reasons, the Court GRANTS the Motion and enters default judgment against Third-Party Defendants Shane Bennett and Argus Drilling, LLC (Argus).

I.     **Background**

Plaintiffs D'Arcy Petroleum, LLC, Lord Fisher Petroleum, LLC, and Brandon Rolnick bring this action against Defendants John Mink, Kelly Buster, and their affiliated companies for allegedly engaging in a "corrupt and criminal enterprise" involving certain oil and gas wells on the Sheridan Lease in Coleman County, Texas.  Compl. (ECF No. 1); Am. Compl. 2 (ECF No. 13).  As part of Defendants' purported "scam," Buster—operating the Sheridan Lease wells through Strawn Operating, LLC—allegedly made repeated misrepresentations to Mink regarding the Sheridan Lease wells' output with the knowledge that Mink would use the false information to market the wells to potential investors.  Am. Compl. 6–7.  Mink would then wire acquired investment funds to another of Buster's Companies, Union.  *Id.* at 7.  Based on Buster's alleged misrepresentations, Plaintiffs made three separate investments with Mink and Buster's companies amounting to $129,000.  *Id.* at 18.  After Plaintiffs invested in the wells, they uncovered the truth that the wells on the Sheridan Lease were producing at only a fraction of the promised quantities and were not gauged to measure individual output.  *Id.* at 19–21.  Despite several requests, Buster refused to refund Plaintiffs' investments.  *Id.* at 21.

Therefore, Plaintiffs brought claims against Defendants for numerous RICO violations, common law fraud, aiding and abetting fraud, negligent misrepresentation, civil conspiracy, and constructive trust.  Over the course of this litigation, Plaintiffs voluntarily dismissed several defendants (ECF Nos. 14, 15) and this Court granted, in part, other Defendants' motion to dismiss for failure to state a claim.  (ECF No. 25).  The only claims remaining are those against Buster and Union.

Buster and Union subsequently filed a Third-Party Complaint, in which they seek to have the trier of fact apportion any damages awarded to Plaintiffs according to Chapter 33 of the

Texas Civil Practice and Remedies Code.  Third-Party Compl. 4 (ECF No. 28).  In this Complaint, Buster and Union assert that they contracted with Bennett, who held himself out as an expert in oil and gas production, and his company Argus to provide field services on the Sheridan Lease.  *Id.* at 3.  According to Buster and Union, all the information about the Sheridan Lease wells originated with Bennett and Argus; and any misrepresentations Buster and Union unwittingly conveyed to Plaintiffs were based on information that Buster believed to be accurate and reliable.  *Id.* at 3–4.

Buster and Union properly served Bennett and Argus on October 22, 2020.  Summons Returned Executed (ECF Nos. 42, 43).  No attorney or representative filed an answer or otherwise appeared on their behalf.

Accordingly, Buster and Union filed the pending Motion for Default Judgment.  Citing Chapter 33, they request that this Court enter a default judgment requiring that Bennett and Argus be held accountable for Plaintiffs' loss or damages, if any, in proportion to the amount determined by the jury or trier of fact.  Third-Party Compl. 4; Mot. Default J. 2–3.  Following a hearing with the Magistrate Judge, Buster and Union requested, and on April 23, 2021, the clerk made an Entry of Default against Bennett and Argus, stating that they had failed to answer or otherwise defend the case as directed. (ECF No. 55).

**II.     Legal Standards and Analysis**

Rule 55 governs applications for default and default judgment.  FED. R. CIV. P. 55.  Three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment.  *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  A default occurs when a defendant has failed to plead or otherwise respond within the time required by the Federal Rules of Civil Procedure.  *Id.*  The

Clerk will enter a default when the party's default is established by an affidavit or otherwise. *Id.* (citing FED. R. CIV. P. 55(a)). After the entry of default, a plaintiff may apply to the court for a default judgment. *Id.*

Default judgment is a drastic remedy, resorted to only in extreme situations. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). However, it is a remedy generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977) (citing 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2685 (4th ed.)). To determine whether to enter default judgment, a court should examine: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (citing CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2685 (2d ed. 1983)). After considering the Third-Party Complaint, the Motion for Default Judgment, the materials supporting the Motion, and the applicable law, including the *Lindsey* factors, the Court finds it is appropriate to enter a default judgment against Bennett and Argus.

Here, there are no material issues of fact; rather, because of Bennett and Argus's default, the Court takes as true the facts as Buster and Union allege them. *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, 2017 WL 373478, at *2 (N.D. Tex. Jan. 26, 2017) (Lynn, C.J.). Additionally, there is no substantial prejudice against Bennett and Argus. Buster and Union properly served the Third-Party Complaint on Bennett and Argus on October 22, 2020; the

grounds for default against Bennett and Argus are clearly established; and the Clerk properly entered default against them. There is also nothing before the Court indicating that Bennett and Argus's failure to appear was a good-faith mistake or the result of excusable neglect.

Further, entering default judgment against defendants who have taken no action to respond to a suit is not "harsh." *Verch v. White Rock Sec. Grp., LLC*, 2020 WL 4550419, at *2 (N.D. Tex. June 30, 2020) (Rutherford, J.) (citing Joe *Hand*, 2017 WL 373478, at *2), *adopted by* 2020 WL 4530716 (N.D. Tex. Aug. 6, 2020). Bennett and Argus had over six months to respond to the Third-Party Complaint, thus mitigating the harshness of a default judgment. *See John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (Lynn, J.) (finding that five months to answer a complaint was long enough to mitigate the harshness of default judgment).

The pleadings also sufficiently support a default judgment, and a remedy can be devised without a hearing. Buster and Union seek apportionment of any damages caused to Plaintiffs by material misrepresentations regarding oil and gas production from wells on the Sheridan Lease. They request such apportionment be determined by "the jury or trier of fact" under the "proportionate liability scheme" of Chapter 33 of the Texas Civil Practice and Remedies Code. Third-Party Compl. 4.

Federal Rule of Civil Procedure 14 permits a defendant to "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." FED. R. CIV. P. 14(a)(1). Because Rule 14 merely governs the procedure for impleading third parties and does not create any substantive rights, courts must look to state law to determine whether there is a substantive right to the relief sought. *Neal v. 21st Mortg. Corp.*, 601 F. Supp. 2d 828, 830 (S.D. Miss. Feb. 6, 2009) (citing 6 C. WRIGHT AND MILLER, FEDERAL PRACTICE AND

PROCEDURE § 1451 (1971)). District courts in this Circuit have found that Chapter 33 "is not in conflict with the Federal Rules of Civil Procedure and can therefore apply substantively in" cases invoking the court's diversity jurisdiction, as Plaintiffs do here. *Vecron Exim Ltd. v. XPO Logistics, Inc.*, 2019 WL 2025206, at *4 (S.D. Tex. May 8, 2019).

Under Chapter 33, a defendant sued in tort may seek to reduce its liability "by a percentage of responsibility attributed to a responsible third party." *Oliva v. USA Truck, Inc.*, 2019 WL 7756355, at *6 (N.D. Tex. Nov. 15, 2019) (internal quotation marks omitted), *adopted by* 2020 WL 418890 (N.D. Tex. Jan. 27, 2020). Accordingly, defendants may move under § 33.004(a) to designate a responsible third party. *EH Nat'l Bank v. Tran*, 2016 WL 4138634, at *2 (N.D. Tex. Aug. 4, 2016). "If a court gives leave to designate a responsible third party, and there is evidence sufficient to submit a question to the jury regarding the conduct of the party, the trier of fact determines the percentage of responsibility of the claimants, defendants, settling persons, if any, and any responsible third parties." *Curlee v. United Parcel Serv., Inc.*, 2014 WL 11516541, at *2 (N.D. Tex. Dec. 12, 2014) (citing TEX. CIV. PRAC. & REM. CODE § 33.003).

It is only after a joint and severally liable defendant pays a greater percentage of the damages than its determined percentage of responsibility that it may seek contribution under Texas law. TEX. CIV. PRAC. & REM. CODE § 33.015.

Consequently, this Court has the authority to grant the relief that Buster and Union seek. Their request that the trier of fact apportion liability between Plaintiffs, Defendants, and Third-Party Defendants is an appropriate form of relief. Taking as true the allegations in the Third-Party Complaint, there is sufficient evidence that: (1) Bennett and Argus knowingly provided Buster and Union with false information regarding production on the Sheridan Lease with the intent that Buster and Union would rely upon this information; (2) that Buster and Union relied

6

on the false information and relayed it to Plaintiffs in the form of misrepresentations about oil and gas production from the Sheridan Lease wells; and (3) that Plaintiffs relied on these misrepresentations to their detriment. A trier of fact could determine that such conduct amounts to fraud or negligent misrepresentation as pleaded by Buster and Union. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) ("To prevail on a fraud claim, a plaintiff must show: (1) the defendant 'made a material representation that was false'; (2) the defendant 'knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;' (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result."); *Willis v. Marshall*, 401 S.W.3d 689, 698 (Tex. App.—El Paso 2013, no pet.) ("The elements of a negligent-misrepresentation cause of action consist of: (1) defendant's representation to a plaintiff in the course of defendant's business or in a transaction in which the defendant had an interest; (2) defendant's providing false information for the guidance of others; (3) defendant's failure to exercise reasonable care or competence in obtaining or communicating information; (4) plaintiff's justifiable reliance on defendant's representation; and (5) defendant's negligent misrepresentation proximately causing the plaintiff's injury.").

Therefore, Buster and Union state a plausible claim for default judgment. And given the authority of the trier of fact to make factual findings regarding proportionate responsibility, the Court could render a remedy without a hearing. As a result, the Court would not feel obligated to set aside the default upon a motion by Bennett or Argus.

### III. Conclusion

All factors considered by courts in determining whether to grant default judgment have been satisfied. Accordingly, this Court GRANTS Buster and Union's Motion for default

judgment. Bennett and Argus shall be liable for Plaintiffs' damages, if any, to the extent of their proportionate liability, as ultimately determined by the trier of fact.

**SO ORDERED**.

May 14, 2021.

_____
BARBARA M. G. LYNN
CHIEF JUDGE